

Charles M. Lizza
Phone: (973) 286-6715
Fax:  (973) 286-6815
clizza@saul.com
www.saul.com

October 2, 2012

**VIA ECF & FEDEX**

The Honorable Cathy L. Waldor, U.S.M.J.
United States District Court
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, New Jersey 07102

<div style="border:1px solid">

**Contains Highly Confidential
Material Subject to Discovery
Confidentiality Order**

</div>

Re:    *Jazz Pharmaceuticals, Inc. v. Roxane Laboratories, Inc.*
         Civil Action No. 10-6108 (ES)(CLW)

Dear Judge Waldor:

This firm, together with Quinn Emanuel Urquhart & Sullivan, LLP and Richard G. Greco PC, represents plaintiff Jazz Pharmaceuticals, Inc. ("Jazz") in the above-captioned action.  Jazz respectfully requests that Your Honor disqualify Jazz's consultant, Dr. Neil T. Feldman, from serving as an expert for Defendant Roxane Laboratories, Inc. ("Roxane") in this case.[1]  Dr. Feldman has entered into ███████████ confidentiality agreements with Jazz █████████.  Further, Dr. Feldman has been given access to highly confidential information regarding the subject matter of the patents-in-suit, ████████████████████████████████ ████████████████████████  All of his confidentiality agreements have continuing obligations to maintain the confidentiality of the information disclosed.

Disqualification is the appropriate remedy.  The expertise that Roxane seeks from Dr. Feldman derives squarely from the confidential information that Dr. Feldman received through his confidential relationship with Jazz.  Put simply, neither law nor common sense permits an individual to serve as an expert for one party (Roxane) in a litigation when he also served as a consultant for the opposing party (Jazz) regarding the subject matter in suit.  Dr. Feldman should be disqualified from serving as Roxane's expert in this litigation.

_____

[1]    Also, submitted herewith in support of this request is the Declaration of Philip J. Honerkamp ("Honerkamp Decl.").  "Ex. __" refers to the exhibits attached to the Declaration of Philip J. Honerkamp.

One Riverfront Plaza, Suite 1520 ♦ Newark, NJ 07102-5426 ♦ Phone: (973) 286-6700 ♦ Fax: (973) 286-6800
Stephen B. Genzer - Newark Managing Partner

DELAWARE    MARYLAND    MASSACHUSETTS    NEW JERSEY    NEW YORK    PENNSYLVANIA    WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

Hon. Cathy L. Waldor, U.S.M.J.
October 2, 2012
Page 2

## I.     BACKGROUND

This action for patent infringement stems from Roxane's efforts to market a generic version of Jazz's XYREM® product. XYREM® is approved for the treatment of excessive daytime sleepiness and cataplexy in patients with narcolepsy. The patents-in-suit[2] concern formulations containing sodium oxybate (the active ingredient in XYREM®), methods of using sodium oxybate to treat narcolepsy, and methods of using sodium oxybate without diversion or abuse. (*See* Ex. A at col. 72, lns. 19-37.)

Pursuant to Paragraph 13 of Discovery Confidentiality Order, on September 4, 2012, Roxane notified Jazz of its intent to use Dr. Feldman as an expert in this litigation. Confronted with the obvious conflict of interest arising from Dr. Feldman's confidential relationship with Jazz, Jazz promptly objected to Dr. Feldman. However, despite Dr. Feldman's ongoing confidentiality obligations to Jazz, Roxane continues to insist on using Dr. Feldman as an expert, thereby necessitating the instant letter-request.



█████████████ Dr. Feldman has been bound by ████████ express, written, confidential agreements with Jazz relating to XYREM®. These are just a few representative examples of the various agreements in which Dr. Feldman agreed to maintain the confidentiality of any Jazz clinical, business, and marketing information relating to XYREM®.

---

2        The patents-in-suit are U.S. Patent Nos. 6,472,431, 6,780,889, 7,262,219, 7,851,506, 7,668,730, 7,765,106, 7,765,107, and 7,895,059.

Hon. Cathy L. Waldor, U.S.M.J.
October 2, 2012
Page 3



Thus, Dr. Feldman received information that remains confidential, and relates specifically to the use of XYREM® to treat narcolepsy patients—the subject matter of certain patents-in-suit. (*See* Ex. A at col. 72, lns. 19-37.)

## II.   ARGUMENT

### A.   Legal Standard

Federal courts have inherent power to disqualify expert witnesses to protect the integrity of the adversary process, to protect privileges that otherwise may be breached, and to promote confidence in the legal system. *See U.S. ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 248-49 (D.N.J. 1997); *Campbell Indus. v. MIV Gemini*, 619 F.2d 24, 27 (9th Cir. 1980) (court may exclude expert witness whose trial testimony would unfairly prejudice an opposing party); *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 277-278 (S.D. Ohio 1988).

This Court has adopted a two-prong test to determine whether to disqualify an expert because of a prior relationship with another party in the litigation. *Cherry Hill*, 994 F. Supp. at 249. The first prong looks to whether it was "objectively reasonable" for the objecting party to believe that a confidential relationship existed. *Id.* The second prong looks to whether the objecting party disclosed any confidential information to the expert. *Id.* The expert should be disqualified if the answer to both inquiries is in the affirmative. *Id.; see also Nike, Inc. v. Adidas Am. Inc.*, No. 06-43, 2006 WL 5111106, at *1 (E.D. Tex. Sept. 29, 2006) (citing *Koch Ref. Co. v. Boudreau*, 85 F.3d 1178, 1181 (5th Cir. 1996)). The existence of a confidential relationship between the moving party and the expert is measured from the perspective of the moving party, not the expert. *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 581 (D.N.J. 1994) ("The real question is whether [the moving party] acted reasonably in assuming that a confidential or fiduciary relationship existed.") The moving party bears the burden of establishing these elements. *Id.* at 580.

Hon. Cathy L. Waldor, U.S.M.J.
October 2, 2012
Page 4

While the moving party must demonstrate that it disclosed confidential information to the expert, it <u>need not</u> show that the expert subsequently disclosed that information to the opposing party; rather, the potential threat that the moving party's confidences may be disclosed by the expert to the opposing party is sufficient to warrant disqualification. *Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 83-8898, 1989 U.S. Dist. LEXIS 3013 at *12-13 (S.D.N.Y. Mar. 28, 1989); *Grioli v. Delta Int'l Mach. Corp.*, 395 F. Supp. 2d 11, 14-15 (E.D.N.Y. 2005). In addition to the two-part inquiry, courts in this District and others further require that the confidential information that is disclosed to the expert bears a substantial relationship to the pending litigation. *Cherry Hill*, 994 F. Supp. at 251; *Michelson*, 1989 U.S. Dist. LEXIS 3013 at *11-13. In the context of a patent-infringement suit, confidential information bears a substantial relationship to the pending litigation if it concerns the specific technology at issue in the litigation. *Space Systems/Loral v. Martin Marietta Corp.*, No. 95-20122, 1995 U.S. Dist. LEXIS 22305, at *7-10 (N.D. Cal. Nov. 15, 1995).

Before disqualifying an expert, a court should attempt to balance competing policy objectives and determine whether the public has an interest in allowing the expert to testify. *Cordy*, 156 F.R.D. at 580; *Koch*, 85 F.3d at 1182; *Grioli*, 395 F. Supp. 2d at 14. Policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. *See Cordy*, 156 F.R.D. at 580. Policy objectives militating against disqualification include ensuring access to expert witnesses who possess specialized knowledge and allowing experts to pursue their professional calling. *Id.* Accordingly, courts have considered whether other experts are available and whether the opposing party has time to hire such experts before trial. *Koch*, 85 F.3d at 1183.

In this case, Jazz has met all of the requirements in favor of disqualification. Accordingly, Jazz respectfully submits that this Court should enter an order prohibiting Roxane from using Dr. Feldman as an expert.

**B.      Dr. Feldman Should Be Disqualified**

**1.      A Confidential Relationship Exists Between Jazz and Dr. Feldman**

Dr. Feldman's ▊▊▊▊▊ confidentiality agreements with Jazz that include express, ongoing provisions protecting Jazz's confidential information provide more than sufficient grounds for Jazz to have an objectively reasonable basis to believe that a confidential relationship exists between it and Dr. Feldman. *See AstraZeneca Pharms., LP v. Teva Pharms. USA, Inc.*, No. 05-5333, 2007 WL 4292384, at *2 (D.N.J. Dec. 4, 2007) (agreement with expert containing confidentiality provision supported objectively reasonable belief in existence of confidential relationship); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 95-8833, 2000 U.S. Dist. LEXIS 321, at *12-13 (S.D.N.Y. Jan. 14, 2000) (same). Dr. Feldman's longstanding and regular interactions with Jazz regarding sensitive technical and commercial aspects of XYREM® constitute further proof to support Jazz's objectively reasonable belief that it shares a confidential relationship with him. *See Koch*, 85 F.3d at 1182 ("Lower courts have found such a relationship to exist when the record supports a longstanding series of interactions,

Hon. Cathy L. Waldor, U.S.M.J.
October 2, 2012
Page 5

which have more likely than not coalesced to create a basic understanding of [the retaining party's] *modus operandi,* patterns of operations, decision-making process, and the like.") (citations omitted).

### 2.   Dr. Feldman Has Received Confidential Information Regarding XYREM®

As described above, Jazz has disclosed confidential information to Dr. Feldman concerning "the specific technology at issue in this lawsuit," i.e., XYREM® and its use to treat narcolepsy.



Thus, Dr. Feldman is in possession of the type of "highly sensitive marketing, business, and clinical information" that satisfy's this Court's two-part disqualification test. *See AstraZeneca,* 2007 WL 4292384, at *4 (disqualifying expert).[3]

Roxane's attempt to use Dr. Feldman as an expert for XYREM®, when he has extensively worked for Jazz on the same drug, creates a clear conflict of interest and assaults the integrity of the adversarial process. Further, there is no evidence that Dr. Feldman possesses any specialized knowledge beyond that of any other expert in the relevant art, nor is there any evidence that Dr. Feldman will be deprived of his livelihood or professional calling if he is disqualified. Dr. Feldman is a clinician, not a professional expert. *See Grioli,* 395 F. Supp. at 15 (public interest not harmed where there was no showing that disqualified expert is "a testimonial expert

---

[3]    In discussions with Jazz, Roxane has contended that Dr. Feldman should not be disqualified because he does not have knowledge of Jazz's litigation strategies, views of the strengths and weaknesses of each side, the role of each of Jazz's witnesses to be hired, and anticipated defenses. The standard for disqualification, however, is not whether Dr. Feldman had access to Jazz's legal strategies. Rather, the "confidential information disclosed to the proposed expert[] must bear a substantial relationship to the pending litigation." *AstraZeneca,* 2007 WL 4292384, at *3 (citation omitted). Here, the confidential information concerns XYREM® and how to use XYREM® to treat narcolepsy—both of which are subject matters of the patents-in-suit.

Hon. Cathy L. Waldor, U.S.M.J.
October 2, 2012
Page 6

who is being deprived of his livelihood"); *Bristol-Myers Squibb Co.,* 2000 U.S. Dist. LEXIS 321 at *15-16 (same).

Roxane will not be unduly prejudiced by Dr. Feldman's disqualification. There is nothing to suggest that Roxane has yet relied upon any expert advice rendered by Dr. Feldman, or that Roxane will not be able to secure the services of another equally qualified expert in time for expert discovery, which is currently stayed. Finally, it is clear that Jazz did not engage the services of Dr. Feldman to prevent him from serving as an expert for Roxane in this litigation. Jazz's relationships with Dr. Feldman was initiated in good faith and long predates the existence of this lawsuit.

Courts confronted with similar circumstances in patent-infringement suits have disqualified experts. In *Bristol-Myers Squibb Co.,* Bristol-Myers Squibb ("BMS") sought to disqualify Rhone-Poulenc Rorer, Inc.'s ("RPR's") expert, Dr. McGuire, on the ground that, for several years prior to suit, Dr. McGuire had served as an outside consultant, clinical investigator, and public speaker for BMS regarding the ovarian cancer drugs Taxol and oral etoposide at issue in that case. *Id.* at *3. RPR designated Dr. McGuire to testify, not as to Taxol or oral etoposide, but rather, as to what extent he and other oncologists would have used another drug, Taxotere, to treat patients if Taxol were not available. *Id.* at *9. The court found that, while Dr. McGuire's prior work for BMS did not deal directly with Taxotere, such work nevertheless bore a substantial relationship to the pending litigation, as testimony regarding the extent to which Dr. McGuire would have used Taxotere would "necessarily involve a consideration of etoposide or other drugs available to treat ovarian cancer." *Id.* at *14-15. Thus, the court disqualified Dr. McGuire.

In *Wang Laboratories, Inc. v. CFR Associates, Inc.,* 125 F.R.D. 10 (D. Mass. 1989), Wang Laboratories, Inc. ("Wang") sought a protective order to prevent CFR Associates, Inc. ("CFR") from using its former employee, Golini, as an expert witness. Upon joining Wang, Golini signed an employment contract containing a provision that required him to keep confidential all of his work at Wang. *Id.* at 13. The court disqualified Golini from serving as CFR's expert witness, holding that "CFR has introduced no evidence which would indicate that Golini's expertise on the [patent-in-suit] is based on information not gained during the course of his employment [at Wang]." *Id.* at 13. The court recognized that if Golini were retained as CFR's expert, he would inevitably breach Wang's confidences and use in the pending litigation knowledge acquired through his confidential relationship with Wang.

In the present case, the facts favoring disqualification are even more compelling than those in *Bristol Myers Squibb Co.* and *Wang Laboratories, Inc*. Like the experts in those cases, Dr. Feldman has a long-standing confidential relationship with Jazz, reflected in his written agreements and subsequent interactions with Jazz. Also, like the experts in those cases, Dr. Feldman received, through his relationship with Jazz, confidential information concerning the specific technology in suit, which will inevitably be disclosed through his testimony in the pending litigation. It would be fundamentally unfair and improper to allow Dr. Feldman to use confidential information obtained during the course of his long relationship with Jazz as a sword

Hon. Cathy L. Waldor, U.S.M.J.
October 2, 2012
Page 7

against Jazz (consciously or unconsciously) in this litigation and at trial.  Under these circumstances, this Court should disqualify Dr. Feldman.

Earlier in this case, Roxane sought to bar patent prosecution attorneys from access to confidential Roxane information, arguing that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  D.I. 26 at 7.  Due to the potential for inadvertent use of confidential information, the Discovery Confidentiality Order in this case contains the patent prosecution bar sought by Roxane.  D.I. 54 at 10.  Here, the same reasoning should apply to potential use, even if inadvertent, of confidential Jazz information in the hands of a paid consultant who does not have an attorney's ethical obligations.  Dr. Feldman should not have the opportunity to improperly use information he learned through his confidential relationship with Jazz, which would be inevitable if he participates as an expert for Roxane in this case.

## III.    CONCLUSION

For the foregoing reasons, Jazz respectfully requests that this Court disqualify Dr. Feldman as an expert for Roxane.

Respectfully yours,

Charles M. Lizza

Enclosure

cc:    All Counsel (via e-mail)